**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
    *eric.poulin@poulinwilley.com*
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
    *blake.abbott@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
    *paul.doolittle@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
*Attorneys for Plaintiff John Franz*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| JOHN FRANZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HYUNDAI MOTOR AMERICA,<br><br>Defendant. | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Franz, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Hyundai Motor America ("Hyundai" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of public documents.

## PRELIMINARY STATEMENT

1.      Vehicle manufacturers must follow certain basic rules and procedures. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. Upon discovering a defect, a vehicle manufacturer must explicitly disclose the defect and either correct the defect or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of its duties and rules.

2.      Plaintiff brings this action on behalf of himself and all similarly situated persons who purchased or leased any of the following vehicles ("Class Vehicles")[1]:

    a)  2023-2024 Hyundai Palisade

    b)  2023 Hyundai Tucson

    c)  2023 Hyundai Sonata

    d)  2023 Hyundai Elantra

    e)  2023 Hyundai Kona

---

[1] https://theweeklydriver.com/2023/08/hyundai-and-kia-issue-recall-over-oil-pump-fire-risk/#:~:text=Hyundai%20and%20Kia%2C%20the%20South,fires%2C%20according%20to%20regulatory%20filings.

CLASS ACTION COMPLAINT                    2

3.    Plaintiff brings this action to remedy various violations of law in connection with Defendant's manufacturing, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.

4.    Specifically, these Class Vehicles have malfunctioning oil pumps. The oil pump contains a controller that can short-circuit and overheat ("Oil Pump Defect"). Due to this defect, oil (the Class Vehicles' lubricant) is likely to overheat and combust, creating a massive fire risk. Oil is highly combustible and presents a ready danger when exposed to any ignition source.[2]

5.    In August of 2023, Defendant, and its subsidiary Kia, recalled the Class Vehicles. In total, this Recall included over 90,000 vehicles produced by Defendant Hyundai or its subsidiary, Kia ("Recall").[3]

6.    The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including counsel's analysis of publicly available information.

## **JURISDICTION AND VENUE**

7.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

---

[2]https://www.abcbalancingbeads.com/will-oil-spills-catch-fire/#:~:text=Even%20though%20motor%20oil%20isn,300%C2%B0%2D400%C2%B0%20Fahrenheit.

[3] https://theweeklydriver.com/2023/08/hyundai-and-kia-issue-recall-over-oil-pump-fire-risk/#:~:text=Hyundai%20and%20Kia%2C%20the%20South,fires%2C%20according%20to%20regulatory%20filings.

8.    This Court has personal jurisdiction over Defendant Hyundai because Defendant Hyundai's headquarters and principal place of business are located within this district.

9.    Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The Defendant sells and distributes its vehicles throughout the United States and within this District.

## PARTIES

10.    John Franz is a citizen of the State of South Carolina and resides in Gaffney, South Carolina. Gaffney is located within Cherokee County, South Carolina.

11.    Defendant Hyundai is a corporation organized and in existence under the laws of the State of California. Defendant's corporate headquarters are located at: P.O. Box 20850 Fountain Valley, CA 92728.

12.    Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases vehicles, including the Class Vehicles, nationwide and in South Carolina. Defendant is the warrantor and distributor of the Class Vehicles in the United States.

13.    Through various entities, Defendant markets, distributes, warrants, and sells Hyundai automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including South Carolina.

## FACTUAL ALLEGATIONS

14.    In April of 2023, Plaintiff purchased his 2023 Hyundai Tucson from Benson Hyundai in Spartanburg, South Carolina. Plaintiff's vehicle currently has 3100 miles on it; essentially, it is brand new.

CLASS ACTION COMPLAINT                4

15. Plaintiff's 2023 Hyundai Tucson is a vehicle included within Defendant's Recall.[4]

16. Based on Hyundai's active and persistent promotions touting the quality of its vehicles and on Plaintiff's admiration of Hyundai vehicles, Plaintiff considered Hyundai a quality company with a strong reputation for producing reliable vehicles.

17. In addition to Hyundai's reputation (gained through marketing and promotion), Plaintiff decided on the 2023 Hyundai Tucson because he believed it was a high-quality vehicle after a salesman convinced him that the vehicle was highly reliable, came with great technological features, and fitted his needs.

18. Plaintiff has never been informed of any recalls or defects related to his vehicle's oil-delivery system by anyone affiliated with Hyundai; instead, he heard of the Oil Pump Defect on social media.

19. Since 2023, Defendant has designed, manufactured, distributed, sold, and leased the Class Vehicles. Defendant has produced and sold, directly or indirectly, through dealers and other retail outlets, over 90,000 recalled vehicles, including the Class Vehicles in South Carolina and nationwide.[5]

20. As mentioned earlier and discussed in more detail below, the Class Vehicles contain a design defect that causes a serious safety concern. That is, the oil-delivery system—specifically, the oil pump—is defectively designed.

21. Due to the design defect, the Class Vehicles' oil pump tends to malfunction and overheat while surrounded by combustible oil.[6] This is a massive fire risk.[7]

---

[4] https://www.Hyundai.com/recall.
[5] https://theweeklydriver.com/2023/08/hyundai-and-kia-issue-recall-over-oil-pump-fire-risk/#:~:text=Hyundai%20and%20Kia%2C%20the%20South,fires%2C%20according%20to%20regulatory%20filings.
[6] *Id*.
[7] https://blog.storemasta.com.au/is-oil-flammable.

22.    To be clear, the Class Vehicles require the use of combustible oil.[8]

23.    The defective oil-pump system inside the Class Vehicles malfunctions within the first two years of its lifespan, whereas the expected lifespan of oil pumps is often as long as the lifespan of the car itself.[9]

24.    Defendant, directly or indirectly, has sold tens of thousands of Class Vehicles with defective oil-circulation systems in America.[10]

25.    Defendant's recall, which includes a free fix-and-repair clause requiring Defendant to repair and replace the faulty parts, will cost Plaintiff hours of his time. Specifically, repairing oil pumps takes at least four hours and may take up to eight.[11]

26.    Furthermore, Defendant's Recall does not offer any reasonably foreseeable guarantee that the Oil Pump Defect will go away permanently. Rather, the Recall mentions installing a new oil pump, but mentions no testing or assurances that the new oil pump will solve the issue fully.[12]

27.    Given that Defendant has already issued recalls on this specific Class Vehicle for fire-related issues, any fixes to this vehicle are no more than temporary solutions to a faulty vehicle.[13]

28.    Assuming that the Recall was effective and offered a true fix, Plaintiff is still burdened with a vehicle that has been devalued by Defendant's actions, because the value of a car with a known history of faulty oil pumps is worth much less than a car with properly working oil pumps (or at least a history of working oil pumps with no critical issues).

---

[8] *Id.*
[9] https://haynes.com/en-gb/tips-tutorials/what-is-car-oil-pump.
[10] https://www.wistv.com/2023/08/14/Hyundai-recalls-2023 Hyundai Tucson-truck-models-potential-fire-hazard/.
[11] https://www.fixdapp.com/service/what-is-the-average-oil-pump-replacement-cost/.
[12] https://www.cnn.com/2023/08/03/business/hyundai-kia-fire-recall/index.html.
[13] https://www.cnn.com/2021/03/09/business/kia-sportage-cadenza-fire-risk-recall/index.html.

CLASS ACTION COMPLAINT                    6

29.    Given the above, Defendant's Recall is no more than a repeatedly ineffective waste of time, because there is no true fix for the Oil Pump Defect. Unless Defendant issues a more comprehensive recall to fix the root cause of the Oil Pump Defect, it is foreseeable, and should be expected, that the Class Vehicles' oil-circulation systems will fail once again..

30.    In all, Defendant's Recall leaves more questions than answers regarding the Class Vehicles' safety and oil-circulation system; thus, the Recall results in a diminution in the Class Vehicles' value.

31.    Transitioning back to the repair itself, repairing the oil pump will take a minimum of four hours, and may take up to eight hours. This means that it will take Defendant a minimum of 364,000 hours, and up to 712,800 hours, to repair all recalled vehicles.[14] This amounts to a range of 41 to 83 years.

32.    In addition to the sheer amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to transport himself and his defective Class Vehicle to a Hyundai-certified mechanic. For Plaintiff, this service center is Benson Hyundai in Spartanburg.

33.    Plaintiff's repair-related commute is roughly a 45-minute drive via I-85.[15]

34.    Given the math above, Plaintiff may spend up to eight hours and forty-five minutes, but no less than four hours and forty-five minutes, in repairing his Class Vehicle.

35.    In addition to the sheer amount of time spent in repairing his vehicle, Plaintiff faces another major expense: the price of towing his vehicle. The average

---

[14] https://www.fixdapp.com/service/what-is-the-average-oil-pump-replacement-cost/.
[15] https://www.google.com/maps.

CLASS ACTION COMPLAINT                    7

cost of towing, per mile, is $4.75 per mile.[16] Given Plaintiff's roughly 35-mile commute, Plaintiff will have to pay $166.75 to have his Class Vehicle safely transported from his home in Gaffney, S.C. to Spartanburg, S.C. for repairs.

36.    Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff will spend one- and one-half hours solely on transporting his vehicle—unless, of course, one is to assume that Plaintiff drives his combustible and (given the other flammable elements contained in cars) explosive Class Vehicle to the dealership.[17] If Plaintiff is to tow his Vehicle, the total time spent for the repairs will be within a range of five hours and fifteen minutes to nine hours and fifteen minutes.

37.    In all, Defendant's Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

a) **Nationwide Class:** All persons in the United States who purchased or leased any of the Class Vehicles.

b) **South Carolina Subclass:** All persons from South Carolina who purchased or leased any of the Class Vehicles.

39.    Together, the Nationwide Class and South Carolina Subclass will be collectively referred to as the "Class" or "Classes." Members of these Classes will be referred to as "Class Members".

---

[16] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/#:~:text=The%20average%20cost%20per%20mile,mile%20on%20the%20high%20end.&text=Many%20towing%20companies%20may%20also,miles%20you%20need%20to%20go.
[17] https://myautomachine.com/how-long-do-tow-trucks-take/.

CLASS ACTION COMPLAINT                    8

40.     Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

41.     Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

42.     The proposed class definitions in ¶ 38 as limited by ¶ 41 may be amended or modified from time to time.

43.     The particular members of (i) the Nationwide Class and (ii) the South Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents, and from public records.

44.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

45.     The Proposed Classes are so numerous that the joinder of all members is impracticable.

46.     This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

47.     **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination

methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

48. **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle that contained the same Oil Pump Defect found in all other Class Vehicles.

49. **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class-action litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

50. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual class members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

51. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a. Whether Class Vehicles contain the alleged Oil Pump Defect;

    b. Whether the Oil Pump Defect would be considered material by a reasonable consumer;

    c. Whether the Oil Pump Defect would constitute an unreasonable safety risk;

CLASS ACTION COMPLAINT

d.  Whether Defendant had a duty to disclose the Oil Pump Defect to Plaintiff and other Class Members;

e.  Whether Defendant knew or reasonably should have known of the Oil Pump Defect before it sold and leased Class Vehicles to Plaintiff and Class Members;

f.  Whether the Oil Pump Defect has diminished the value of the Class Vehicles;

g.  Whether the Oil Pump Defect is capable of being repaired;

h.  Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the Oil Pump Defect;

i.  Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective engine parts;

j.  Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

k.  Whether Defendant breached its express warranties under state law and/or the UCC;

l.  Whether Defendant is liable for fraudulent omission;

m.  Whether Defendant was unjustly enriched;

n.  Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

## COUNT I

## BREACH OF EXPRESS WARRANTY

52.  Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

CLASS ACTION COMPLAINT                    11

53.    Plaintiff brings this count on behalf of himself and the Class.

54.    Plaintiff and other Class Members formed a contract with Defendant at the time they purchased their Class Vehicles. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

55.    The terms of the contract include the promises and affirmations of fact made by Defendant on the Class Vehicles' packaging and through marketing and advertising, as described above.

56.    This labeling, marketing, and advertising constitute express warranties, and they became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

57.    As set forth above, Defendant purports, through its advertising, labeling, marketing, and packaging, to create an express warranty that the Class Vehicles are safe for their intended use.

58.    Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Class Vehicles.

59.    Defendant breached express warranties about the Class Vehicles and their qualities because the Class Vehicles contained defects rendering them unsafe for their intended use; thus the Class Vehicles do not conform to Defendant's affirmations and promises described above.

60.    Plaintiff and each of the members of the Class would not have purchased or leased the Class Vehicles had they known the true nature of the Oil Pump Defect.

61.    Due to Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

CLASS ACTION COMPLAINT

62.     Plaintiff suffered injury through Defendant's conduct because he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

63.     Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's Vehicle's resale value is diminished. When Plaintiff intends to sell or trade in his Vehicle, the Vehicle's reputation will harm the resale value and place Plaintiff in a much worse bargaining position than if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

64.     Plaintiff also suffered damages in that Plaintiff has spent and will spend hours and money in tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

## COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

65.     Plaintiff incorporates Paragraphs 1-51 as if fully set forth herein.

66.     Plaintiff brings this count on behalf of himself and the Class.

67.     Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

68.     The Class Vehicles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

69.     Defendant entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

70.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendant guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold, and would not be otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

CLASS ACTION COMPLAINT

13

71.    Defendant breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendant did not indicate that the Class Vehicles would contain the Oil Pump Defect.

72.    Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of oil fires, the Class Vehicles are not fit for their particular purpose of legal and safe transportation and usage. Defendant's Recall does nothing to truly address this risk. Rather, the Recall continues to replace parts within a defective system without repairing the underlying cause.

73.    Defendant's warranty expressly applies to the purchaser of the Class Vehicles, creating privity between Defendant and Plaintiff and Class Members.

74.    Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

75.    Defendant was provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles. Defendant was put on actual notice of its breach through the contract between Plaintiff and Class Members and Defendant, and through its review of consumer complaints as well. Defendant's own Recall demonstrates actual notice.

76.    Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would not be provided with proper oil-circulation systems—that is, had they known of the Oil Pump Defect—they would not have purchased the Class Vehicles, or they would have paid less for the Vehicles.

77.    As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all

CLASS ACTION COMPLAINT                                    14

damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

78.    Plaintiff suffered injury in that he purchased a worthless Vehicle. For all intents and purposes, Plaintiff's vehicle is now a notoriously unsafe vehicle that tends to overheat combustible oil.

79.    Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell or trade in his Vehicle, the Vehicle's reputation will harm the resale value and place Plaintiff in a much worse bargaining position than if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

80.    Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Defendant's recall. Had Defendant produced a vehicle that was roadworthy and reliable, Plaintiff would not have had to spend hours of his life tending to this Recall. Plaintiff did not bargain for, or pay for, a vehicle that poses a horrendous fire risk due to its oil-circulation system.

## COUNT III

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301 *ET SEQ.*)

81.    Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

82.    Plaintiff brings this Count individually and on behalf of the Class.

83.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

84.    Defendant is a "supplier" and "warrantor" with the meaning of the MMWA.

85.    The Class Vehicles are "consumer products" within the meaning of the MMWA.

CLASS ACTION COMPLAINT                    15

86. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by a warrantor's failure to comply with a written or implied warranty.

87. Defendant's express warranties are written warranties within the meaning of the MMWA.

88. Defendant breached its warranties by offering for sale and selling the Class Vehicles, which were by design and construction defective and unsafe due to the Oil Pump Defect.

89. Defendant's actions subjected Plaintiff and the Class to danger; those actions also caused monetary damages, because the Class Vehicles are inherently worth less than they would have been without the Oil Pump Defect.

90. Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall and Defect, as Plaintiff and the Class Members have had to collectively spend thousands of hours and dollars repairing the Oil Pump Defect.

91. Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Class, when the Vehicles fail to perform due to the Oil Pump Defect.

92. Due to these breaches, Plaintiff and the Class have suffered damages.

93. Plaintiff and the Class seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Class may be entitled.

94. Plaintiff and the Class suffered injury through Defendant's conduct in that Plaintiff and the Class are now owners of vehicles that are worth significantly less, given the Defect and the notoriety thereof.

95. Plaintiff and the Class suffered injury through Defendant's conduct in that Plaintiff and the Class have, or will have to, spend hours upon hours of their

time, and thousands of dollars in towing fees, in repairing these Class Vehicles. Defendant is willing to repair the Vehicles for free; nonetheless, Plaintiff and the Class must still spend hours in time and thousands of dollars in bringing their flammable Vehicles to Defendant's dealerships for repair.

## COUNT IV

## NEGLIGENT DESIGN DEFECT

96.    Plaintiff incorporates Paragraphs 1-51 as if fully set forth herein.

97.    Plaintiff brings this claim against Defendant on behalf of himself and the Class Members.

98.    Defendant owed Plaintiff and the Class a duty to reasonably and safely design, manufacture, market, and sell the Class Vehicles.

99.    Defendant breached this duty by defectively designing and manufacturing the Class Vehicles, which rendered the cars not fit or suitable for their intended purposes.

100.    Additionally, Defendant's defective design caused monetary damages to Plaintiff and the Class as the Class Vehicles now are worth less compared to the Class Vehicle's value before the Defect became known, given the notoriety of the Defect.

101.    Defendant did not exercise due care in the production of the Class Vehicles. Defendant's design malfunctions horribly, while many other oil-delivery systems, in all sorts of similar existing vehicles,  do not have this Oil Pump Defect.

102.    Plaintiff suffered injury through Defendant's conduct because he suffered economic loss when he purchased a vehicle that is now worthless and unsafe.

103.    Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell or trade in his Vehicle, the Vehicle's reputation will harm the resale value and

CLASS ACTION COMPLAINT                                    17

place Plaintiff in a much worse bargaining position than if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

104.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

105.    The design of the Class Vehicles' defect is unacceptable, because other vehicles produced by other companies and manufacturers work properly and do not have this same defect. In fact, for decades, Defendant has produced other vehicles for decades without any similar defects.

106.    Plaintiff's Class Vehicle is in virtually the same condition as it was in when it left Defendant's factory.

107.    Further evidence of the Class Vehicles' poor quality, as mentioned earlier, is the lifespan of the defective parts, when compared to industry norms for the lifespan of similar parts.

## COUNT V

## FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT

108.    Plaintiff incorporates Paragraphs 1-51 as if fully set forth herein.

109.    Plaintiff brings this count on behalf of himself and the Class.

110.    Defendant knew that the Class Vehicles suffered from an inherently defective oil-circulation system, were defectively designed and/or manufactured, and were not suitable for their intended use. Defendant designed, engineered, and produced the Class Vehicles; therefore, it created its own Oil Pump defect and knew of that Defect.

111.    Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles.

CLASS ACTION COMPLAINT

18

112.    The fact that Defendant's Class Vehicles contained the Oil Pump Defect is a material fact, because oil circulation systems are one of the most critical automobile safety devices.

113.    The oil-circulation systems of the Class Vehicles are faulty and cause fires due to overheating.

114.    Defendant knew of the falsity of the safety of Oil Pump Defect and/or recklessly disregarded the truth or falsity of the dangerous nature of the Oil Pump Defect.

115.    Defendant intended for Plaintiff to act upon such falsity as part of Defendant's commercial operations to sell vehicles.

116.    Plaintiff and Class Members would not have purchased the Class Vehicles had they known of the Oil Pump Defect. Plaintiff and the Class did not know of such Oil Pump Defect; in purchasing Class Vehicles, they relied upon Defendant's false presentation of safety.

117.    Plaintiff did not know of and could not have discovered the Oil Pump Defect, unless Plaintiff were to disassemble the Class Vehicle and inspect the oil pumps throughout the Class Vehicles. This possibility exists outside of reality, because—even if such a possibility would occur to an ordinary consumer—it is highly improbable that any Class Vehicle dealer or dealership would allow for such intensive inspection.

118.    Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles because:

    a.  Defendant was in a superior position to know the true state of facts about the Oil Pump Defect contained in the Class Vehicles;

    b.  The omitted facts were material because they directly impact the safety of the Class Vehicles;

CLASS ACTION COMPLAINT

  c. Defendant knew the omitted facts regarding the defect were not known to or reasonably discoverable by Plaintiff and Class Members;

  d. Defendant actively concealed the defective nature of the Class Vehicles from Plaintiff and Class Members.

119. The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material. A reasonable person would have considered those facts to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Specifically, whether a vehicle becomes inoperable when the oil-circulation system fails is a material safety concern, given oil's flammable nature.

120. Had Plaintiff and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or would have paid less for them.

121. Defendant concealed, or failed to disclose, the true nature of the design and/or manufacturing defects contained in the Class Vehicles, in order to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendant's defective Class Vehicles.

122. As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase or lease of the Defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the Defective Vehicles and recover damages.

123. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

124. Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a worthless, unsafe vehicle.

125. Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell or trade in his Vehicle, the Vehicle's reputation will harm the resale value and place Plaintiff in a much worse bargaining position than if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

126. Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

## COUNT VI

### UNJUST ENRICHMENT

127. Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

128. Plaintiff brings this count on behalf of himself and the Class.

129. Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Class Vehicles.

130. Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

131. Because this benefit was obtained unlawfully—namely, by selling and accepting compensation for the Class Vehicles without providing working oil pumps in the Class Vehicles—it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

CLASS ACTION COMPLAINT                    21

132.    The circumstances, as described further herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

133.    Defendant manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe and operable. Instead, Defendant sold Vehicles with oil-pump issues that present deadly fire risks. And, rather than refunding or reimbursing Plaintiff and Class Members the difference in resale value, Defendant has offered to simply replace the Class Vehicles' defective systems with other defective systems without fixing the root cause of the Defect.

134.    Because it would be unjust and inequitable for Defendant to retain the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT VII

## NEGLIGENCE

135.    Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

136.    Plaintiff brings this count on behalf of himself and the Class.

137.    Defendant caused Class Vehicles to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Class.

138.    At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Class Vehicles, including the duty to take all reasonable steps necessary to provide effective oil pumps in the Class Vehicle's oil-circulation systems.

139.    Defendant breached this duty by producing Class Vehicles with the Oil Pump Defect. For decades, Defendant has produced other vehicles without this Oil Pump Defect; that in itself is evidence that Defendant did not exercise proper care

CLASS ACTION COMPLAINT

in producing the Class Vehicles. As further evidence of Defendant's lack of care, many other manufacturers produce vehicles with effective oil-circulation systems.

140. Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that not providing effective oil-circulation systems could cause or be associated with Plaintiff's and Class Members' injuries.

141. Defendant's alleged negligence included:

    a. Selling and/or distributing the Class Vehicles while negligently and/or intentionally not providing effective oil-circulation systems; and

    b. Systematically failing to provide consumers with effective oil-circulation systems in multiple states.

142. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer actual monetary damages.

143. But for Defendant's negligent design, production, and marketing of Class Vehicles, Plaintiff and the Class would not be injured as they would not have purchased the worthless Class Vehicles.

144. Plaintiff's and Class Members' injuries were foreseeable, because at the time of purchase of Defendant's Product, Defendant had received complaints from Plaintiff and Class Members regarding failure to provide safely and effectively assembled vehicle parts.

145. Further, it is foreseeable that a vehicle with a defective oil-circulation system would be worthless as it would be an incredibly dangerous vehicle to drive. It is also reasonably foreseeable that Defendant's Recall would harm the resale value of the Class Vehicles, given that a car with defective oil pumps would be worth less to a consumer than a car with working oil pumps.

146. Due to Defendant's breach, Plaintiff and the Class were harmed in that they are now driving vehicles with leaking oil pumps, or vehicles whose oil pumps

CLASS ACTION COMPLAINT

may leak at any time, given Defendant's confounding lack of due care in its design and product.

147.  Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

148.  Plaintiff suffered injury through Defendant's conduct because he suffered economic loss by purchasing a vehicle that is now worthless and unsafe.

149.  Plaintiff also suffered economic loss because, due to Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff and the Class intend to sell or trade in their respective Class Vehicles, the Vehicles' poor reputation will harm the resale value, compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

150.  Plaintiff also suffered damages because he has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff and Class Members must also incur time and costs to tow their Class Vehicles to Defendant's dealerships. Plaintiff and the Class have been greatly inconvenienced by Defendant's Recall.

### A.    **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C. Awarding all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

CLASS ACTION COMPLAINT                24

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Awarding costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G. Any other relief the Court may deem just and proper.

## II.    **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: August 31, 2023

By: */s/ Eric M. Poulin*

**POULIN | WILLEY | ANASTOPOULO, LLC**
Eric M. Poulin (California State Bar No. 298476)
    *eric.poulin@poulinwilley.com*
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
    *blake.abbott@poulinwilley.com*
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
    *paul.doolittle@poulinwilley.com*
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
*Attorneys for Plaintiff John Franz*

CLASS ACTION COMPLAINT

25